99  727
102 171

99  727
104  94
104 643

99  727
107 197

99  727
110 299

# Richmond.

## CITY OF WINCHESTER v. CARROLL.

### NOVEMBER 21, 1901.

1. PLEADING—*Declaration*—*Contributory Negligence.*—In an action to recover damages occasioned by the alleged negligence of the defendant, it is not necessary for the plaintiff, in his declaration, to negative his contributory negligence.

2. MUNICIPAL CORPORATIONS—*City Streets*—*Power Over Streets*—*Defective Lighting*—*Code, Sec. 1038.*—The power of a city to light its streets is conferred by Code, section 1038, and a declaration which charges that the city had "assumed and was exercising the right and duty to keep the said streets and sidewalks properly and adequately lighted," is sufficient to charge the city with liability for any injury resulting from the negligent manner in which it performed that duty, whether the charter of the city imposed that obligation or not.

3. MUNICIPAL CORPORATIONS—*Streets*—*Dedication*—*Acceptance.*—A street must not only be dedicated, but accepted by a city before the city can be charged with the duty of keeping it in repair. The dedication need not be in writing, but may be made in any conceivable way that will manifest an intent to dedicate. Acceptance may be by such long use by the public as to render its reclamation unjust and improper. Both dedication and acceptance may be presumed by long user. In the case in judgment the acceptance is clearly established by positive and unequivocal acts, such as paving, lighting, cleaning and the like.

4. MUNICIPAL CORPORATIONS—*Streets*—*Inequalities*—*Negligence in Crossing*—*Instructions.*—It is not negligence for one who is ignorant of a material inequality between the grade of a sidewalk and the street, to attempt to pass from one to the other, at a point other than a regular crossing, if ordinary care be used, but an instruction to this effect, which ignores the evidence tending to show knowledge of such inequality, is misleading.

5. MUNICIPAL CORPORATIONS—*Streets—Ordinary Care.*—A person using the streets of a city is only bound to use ordinary care to avoid accident, but what is ordinary care is to be determined by the facts and circumstances of the particular case.

6. MUNICIPAL CORPORATIONS—*Streets—Crossings—Safe Condition—Negligence.*—One has the right to assume that all parts of a city street are in a reasonably safe condition for the purpose for which they are intended, but he has no right to assume that all parts are as smooth and even as places specially prepared for regular crossings. Greater care is required of one stepping from the sidewalk to the street, in the dark, at a place other than a public crossing, than would be required at such crossing.

7. NEGLIGENCE—*Law and Fact—How Determined.*—Generally, negligence is a mixed question of law and fact to be determined by the court, unless the evidence is conflicting or the facts disputed, in which event the question should be submitted to the jury. But, inasmuch as instructions are predicated on a hypothetical state of facts, when, from the facts assumed, it is manifest that an ordinarily prudent person would not have acted in the manner supposed, it is the duty of the court to tell the jury if they believe from the evidence that such conduct has been established, as a matter of law, it constitutes contributory negligence and bars a recovery.

8. INSTRUCTIONS — *Conflict—Verdict.*—Where inconsistent instructions have been given, the verdict, as a rule, should be set aside.

9. MUNICIPAL CORPORATIONS—*Streets—Obvious Dangers.*—If the unsafe condition of a city street is such as to render its use obviously and imminently dangerous, there can be no recovery by one cognizant of that fact.

Error to a judgment of the Circuit Court of Frederick county, rendered at its June term, 1900, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The evidence in this cause sufficiently appears in the opinion of the court. After the evidence was all in, both plaintiff and defendant tendered instructions. The plaintiff tendered eighteen instructions, to all of which the defendant objected, and which the court modified and then gave over the objection of the defendant. To this action of the court in giving the

instructions as modified the defendant duly excepted. The instructions, as modified and given to the jury, were fourteen in number, and are as follows:

### No. 1.

" The court instructs the jury, that a sidewalk is a part of street, and that it is the duty of a city to use ordinary care to keep its streets and sidewalks in a reasonably safe condition for travel by all persons both young and old, in day-time and the night-time, and a failure to do so is negligence, and if you believe from the evidence in this case that the city of Winchester failed to do so, and Mrs. Carroll was injured thereby you should find a verdict in her favor, provided she exercised on her part ordinary care to avoid the injury."

### No. 2.

" The court instructs the jury, that if you believe from the evidence that on June 8, 1898, and for some years prior thereto the sidewalk on Main street in front of the Valley Female College was much higher than said street, and was a public sidewalk, and that the failure of the city of Winchester to cut said sidewalk down on a level with said street was negligence, and you further believe from the evidence that the plaintiff, Mrs. Carroll, received the injury complained of by reason of such negligence, you should find a verdict in her favor, provided she exercised on her part ordinary care to avoid the injury. This instruction is to be read in connection with Instruction No. 6."

### No. 3.

" The court instructs the jury, that it is the right of a pedestrian to cross the road or street at any point, not only at regular crossings, but elsewhere, but the jury are further instructed that the city is not expected to have the street by the sidewalk in an equally suitable and convenient condition for crossing,

as at a crossing especially prepared for foot passengers, and foot passengers crossing at any point other than a regular crossing must exercise the ordinary care which such circumstances call for."

### No. 4.

" The court instructs the jury, that crossing the road or street or walking from a sidewalk into the street, either at right angles or diagonally, at a point where there is no regular crossing, does not in itself constitute contributory negligence on the part of a pedestrian, but is a circumstance to be weighed and considered by the jury in view of all the circumstances of the case."

### No. 5.

" The court instructs the jury, that where a railing or barrier is necessary for the safety of travellers, the want of such protection is a defect in the highway, for which the city is liable, and whether a railing or barrier was necessary at the point where plaintiff was injured is a question for the jury to determine, but as to the question whether the city should have provided railings or barriers, or should have lowered the sidewalk as referred to in Instruction No. 2, the jury are to take into consideration whether the city used ordinary care in providing sufficient light upon the point at which the accident occurred, or took other reasonable and proper precautions to avoid the danger."

### No. 6.

" The court instructs the jury, that the defendant city is conclusively presumed to have notice of the defect when the same has remained such a length of time, that by the exercise of ordinary diligence, it could have discovered said defect."

### No. 7.

" The court instructs the jury, that a traveller on a public

street or sidewalk is held to the exercise of only ordinary care. Slight negligence, which is a want of extraordinary care, will not defeat a recovery for an injury received in consequence of a failure on the part of the city to keep its public streets and sidewalks in a reasonably safe condition for travel, provided the evidence shows the city authorities were guilty of negligence in permitting the street or sidewalk to remain in a condition not reasonably safe for travel, and that the traveller was injured thereby and was using ordinary care to avoid the injury."

### No. 8.

" The court instructs the jury, that the plaintiff, Mrs. Carroll, is presumed to have exercised due and proper care at the time she received the injury, and the burden of proof that she was negligent is upon the defendant, unless her want of ordinary care is disclosed by plaintiff's own evidence or can be fairly inferred from all the circumstances in the case, and in such case the law requires her to establish her freedom from contributory negligence."

### No. 9.

" The court instructs the jury, that a passer has a right to presume the streets and sidewalks to be reasonably in a safe condition. And though she has actual knowledge of their bad condition, their use by her is not of itself negligence, and does not impose on her the exercise of extraordinary care."

### No. 10.

" The court instructs the jury, that if you believe from the evidence that before June 18, 1898, the city of Winchester had assumed to light Loudoun or Main street at the point where the plaintiff was injured, and that it was done in such a way as not to afford proper security from danger, you can consider that fact on the question of negligence."

## No. 11.

" The court instructs the jury, that the fact that the abutting real estate owner is required by law to keep the sidewalk in repair, or that he does repair the sidewalk or street in front of his premises, does not relieve the city of liability for personal injury sustained on the said street or sidewalk by reason of it being out of repair, or in a condition not reasonably safe for travel, if said sidewalk is a public sidewalk."

## No. 12.

" The court instructs the jury, that if you find for the plaintiff in estimating her damages you can consider any physical and mental pain which you believe from the evidence she has suffered, if any, as a natural result of the injuries, and also any permanent injury, if any, which you believe from the evidence she has sustained, and if you believe from the evidence she was permanently injured, she has a right to recover prospective as well as past damages so your verdict does not exceed $5,000, the amount claimed in the declaration."

## No. 13.

" The court instructs the jury, that it is the duty of a city to use ordinary care to light a street, open for travel, at a point where from any cause there is a reasonable ground to anticipate danger in its use by persons exercising ordinary care, or take such other and reasonable ground to anticipate danger in its use by persons exercising ordinary care, or take such other and reasonable precautions to avert danger as ordinary care on its part requires, and a failure on the part of the city to do so is negligence."

## No. 14.

" The court instructs the jury, that any proposition made in writing by plaintiff to the city before bringing her suit and by

way of compromise, to accept the sum of $3,000, and not accepted by the city, does not preclude her from suing for and recovering more than $3,000 in case you believe that she is entitled under the evidence and the court's instructions to a larger amount."

The defendant thereupon asked twelve instructions, but the court refused to grant Instructions Nos. 2, 9 and 10 asked for by the defendant, and in lieu of Instructions Nos. 1, 4, 5, 7 and 8 gave other instructions. The court also gave one instruction of its own. The defendant excepted to the action of the court in refusing Instructions Nos. 2, 9 and 10, and also in giving instructions in lieu of Instructions Nos. 1, 4, 5, 7 and 8, and in giving the instruction of its own. The instructions asked for by the defendant are as follows:

1. " If the right of the public to use as a highway the sidewalk in front of the Valley Female College property was acquired by dedication, the city of Winchester cannot be charged with its repair nor be held liable for injuries arising from its condition, if dangerous or defective, until its acceptance by the corporate authorities; and the jury are further instructed that if they believe from the evidence the sidewalk was so dedicated or appropriated to the pubic use by the owner thereof, at or about the time the wall enclosing the same was built, and that the dedication or appropriation thereof to the public use as a highway has not been accepted by the proper corporate authorities they must find for the defendant."

2. " The city is not a general guarantor of the safe condition of its streets and sidewalks at all points; and if they believe from the evidence that the point at which the plaintiff passed from the sidewalk to the street was not a public crossing, and that she intended to step from the sidewalk to the street at the point where the accident occurred, they must find for the

defendant, unless they further find that the plaintiff used more than ordinary care and diligence to avoid injury in making such passage."

3. " If they believe from the evidence that the plaintiff could have seen that the roadway was much lower than the sidewalk in time to have avoided the accident if she had been using ordinary care and diligence under the circumstances, they must find for the defendant."

4. " If they believe from the evidence that the plaintiff intentionally stepped from the sidewalk to the roadway at a point which was not a public crossing, and failed to look before she stepped from said sidewalk, they must find that she failed to use that degree of care and diligence under the circumstances which the law requires to entitle her to recovery in this case."

5. " That a person using a street or sidewalk known to plaintiff to be defective and on that account dangerous, is bound to use care commensurate with the known danger; and that if they believe from the evidence the plaintiff knew of the defect of which she complained in her declaration, and failed at the time the accident befell her to use such care, they must find for the defendant."

6. " That if they believe from the evidence that the plaintiff knew that there was no rail or barrier along said sidewalk, or that the sidewalk was higher than the street, but failed at the time of the accident to remember said facts and fell through *inattention,* they must find for the defendant. (*City of Richmond* v. *Courtney,* 32 Gratt., page —.)"

7. "That the defective eyesight or any physical infirmities of the plaintiff may be considered by the jury upon the question of ordinary care; and if they believe from the evidence that such physical defect was the proximate cause of an injury that otherwise would not have occurred, they must find the plaintiff guilty of contibutory negligence. That the misfortune of such

physical infirmity in the plaintiff does not relieve the plaintiff of exercising ordinary care, but imposes upon her the duty of exercising greater precaution to avoid injury."

8. " The burden is on the plaintiff of proving a want of ordinary care on defendant's part, and on defendant to prove the want of such ordinary care on the part of the plaintiff contributing to his injury; but if the plaintiff's declaration or evidence establishes her own contributory negligence, it bars her recovery no matter where the burden rests."

9. " That when there has been mutual negligence on the part of both plaintiff and defendant, and the negligence of each was the proximate cause of the injury complained of, no action can be sustained to recover the damages for such injury."

10. " That the slightest want of ordinary care as defined in these instructions will constitute contributory negligence, if in combination with the negligence of the defendant, it was the proximate cause of the injury of which the plaintiff complains."

11. " That one who is injured by the mere negligence of another cannot recover any compensation for his injury if he by his own negligence proximately contributed to produce the injury of which he complains."

12. " That contributory negligence arises when the plaintiff as well as the defendant has done some act negligently, or has omitted through negligence to do some act it was their respective duty to do, and the combined negligence of the two parties has directly produced the injury."

The substituted instructions given by the court are as follows:

In lieu of Instruction No. 1, above set out, the court gave the following instruction:

" If the right of the public to use as highway the sidewalk in front of the Valley Female College property was acquired by dedication, the city of Winchester cannot be charged with its repair nor be held liable for injuries arising from its condition

if dangerous or defective, until its acceptance by the corporate authorities; but such acceptance may be inferred from the long use of the public accompanied by acts of recognition on the part of the city of the same as a part of the street, and where the sidewalk is referred to in the instructions it has reference to sidewalks proven to be a part of the public way."

And in lieu of Instruction No. 4 above set out, the court gave the following instruction, to wit:

"If they believe from the evidence that the plaintiff intentionally stepped from the sidewalk to the roadway at a point which is not a public crossing, and failed to use reasonable and ordinary care before she stepped from said sidewalk, they must find that she failed to use that degree of care and diligence under the circumstances which the law requires to entitle her to recover in this case."

And in lieu of Instruction No. 7 above set out, the court gave the following instruction, to wit:

"That any defect in the eyesight of plaintiff, if any she has, does not relieve her of her duty to use ordinary care on her part, but imposes upon her the duty of using greater precaution than she would have to use were her eyesight free of defect, being such ordinary care as a person so affected would use under all the circumstances of the case."

And in lieu of Instruction No. 5 above set out, the court gave the following instruction, to wit:

"That a person using a street or sidewalk known to plaintiff to be defective and on that account dangerous, is bound to use care commensurate with the known danger, and that if they believe from the evidence the plaintiff knew of the defect of which she complains in her declaration and failed at the time the accident befell her to use such care as a person of ordinary prudence under the circumstances would have used, they must find for the defendant."

And in lieu of Instruction No. 8, above set out, the court gave the following instruction, to wit:

" That the burden is on the plaintiff of proving a want of ordinary care on defendant's part, and on defendant to prove a want of such ordinary care on the part of the plaintiff contributing to his injury; but if the plaintiff's evidence discloses his own contributory negligence, or it may be inferred from all the circumstances in the case, it bars his recovery, no matter where the burden rests."

The instruction given by the court of its own motion is as follows:

" Negligence as used in the instructions is want of ordinary care. And the care, which is ordinary care, varies according to circumstances. The care which under certain conditions is sufficient to be ordinary care, under other conditions may not be sufficient. Greater caution is demanded on the part of the city or on the part of the plaintiff according as the circumstances demanded greater caution. Each is bound to use only ordinary care, but each is bound to use such ordinary care, and ordinary care is that care which a man of ordinary prudence would use under all the circumstances proved in the case."

*Robert M. Ward,* for the plaintiff in error.

*William L. McCann,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This was an action of trespass on the case brought by A. E. Carroll against the city of Winchester to recover damages for personal injuries sustained by her from a fall received while attempting to step from the sidewalk to the roadway on Loudoun or Main street, in that city.

There was a verdict and judgment for the plaintiff, and the case is brought here on writ of error to that judgment.

The alleged cause of action against the city is, that the sidewalk where the accident occurred was higher than the street; that it was unprotected by a barrier or guardrail, and that the street was insufficiently lighted.

There was an original and amended declaration, each containing several counts, to each of which the defendant demurred. The grounds of demurrer are twofold:

(1) That the averments of the declarations in regard to the circumstances attending the accident disclosed the fact that the plaintiff had been guilty of contributory negligence.

A careful consideration of both the original and amended declaration shows that this objection is not well founded. None of the counts affirmatively presents a case of contributory negligence; and it is not incumbent upon a plaintiff to aver that he has not been guilty of such negligence. The same principle applies to both the pleading and evidence. If the declaration or the plaintiff's own testimony develops a case of contributory negligence, the former would be demurrable and the latter would defeat a recovery. But unless it does so appear, the declaration is not amenable to objection for a failure to deny the existence of contributory negligence, and the burden of proving it rests upon the defendant. There is no obligation on the plaintiff to either deny or disprove it. *B. & O. R. R. Co.* v. *Whittington*, 30 Gratt., 805; *S. W. I. Co.* v. *Andrews*, 86 Va., 270; *N. & W. R. R. Co.* v. *Gilman*, 88 Va., 239.

In point of fact, each count of both declarations denies knowledge on the part of the plaintiff that the sidewalk was higher than the level of the street, and avers that the plaintiff was without negligence, and the injury complained of was the result of the negligence of the defendant.

(2) The other ground of negligence charged is that the city

failed to properly light the street and sidewalk. which omission, it is alleged, was a proximate cause of the accident.

The contention on behalf of the defendant is, that inasmuch as the charter does not grant the power or impose the duty upon the city of lighting the streets, there was no legal obligation resting upon it to do so.

That power is, however, granted by general statute, V. C., sec. 1038, and the declaration avers that the city had "assumed and was exercising the right and duty to keep the said streets and sidewalks properly and adequately lighted."

If such was the fact, whether the charter imposed the obligation to light the streets or not, the city would be liable for any injury that might result from the negligent manner in which it performed that duty. *Noble* v. *City of Richmond*, 31 Gratt., 271; *City of Norfolk* v. *Johnakin*, 94 Va., 285; *Barnes* v. *District of Columbia*, 91 U. S., 540.

There was no error, therefore, in the judgment of the court overruling the demurrer to the declarations.

The second assignment of error is that the plaintiff failed to prove that the sidewalk at the place of the accident was under the control of the city as a public sidewalk.

It is requisite that a street should not only be dedicated but *accepted* by a city, before it can be charged with the duty of keeping it in repair. In the case of a common law dedication and acceptance, both may be presumed from long user. A user for a period corresponding with the statutory limitation applicable to real actions in the jurisdiction where the question arises will ordinarily suffice. 2 Dillon Munic. Corp. (4th ed.), secs. 637-642.

That principle is clearly illustrated in the case of *Buntin* v. *City of Danville*, 93 Va., 200: "Dedication is an appropriation of land by its owner for the public use. It is not within the statute of frauds, and need not be by deed or other writing, but may be effectually done by verbal declaration. It may be ex-

press or implied, and will be implied from long use by the public of the land claimed to be dedicated. The intent is the vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. When such intention has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete; and when complete it is irrevocable."

A dedication thus made and accepted carries with it all the incidents, whether of benefit or liability, which would accrue from the most formal statutory or express dedication. The proof is plenary to establish both a dedication and an acceptance of the thoroughfare in this instance. It has been used as such by the public from the earliest recollection of the oldest inhabitants. For years it had been known in the plan of the city as Loudoun or Main street; the houses fronting on it had been numbered; water mains had been laid, electric wires hung on poles along its curbing, and it had been guttered, lighted, and cleansed at public expense; and the property-owners and city had jointly paved portions of the sidewalk. It was also shown to be under police supervision and within the territorial limits, and under the control of the superintendent of streets and water. The evidence leaves no room for doubt but that it was one of the established and recognized streets of the city, and had been such from the earliest period of its history. *City of Richmond* v. *Stokes*, 31 Gratt., 713; 2 Dillon's Mun. Copr., sec. 1009.

The salient points of the testimony bearing directly upon the accident are: That the sidewalk from which the plaintiff stepped was more than three feet higher than the surface of the street; that there were no barriers or guard-rails to protect it, and that the place was insufficiently lighted. There was an electric light near the southern terminus of the elevated sidewalk, at the intersection of Loudoun or Main street with Peyton

street, but it was defective and afforded an imperfect light, and at times went out entirely.

The length of that section of the sidewalk was 212 feet, embracing the entire frontage of the Valley Female College lot, with an average width of about 12 feet. The sidewalk was held in position by a perpendicular retaining wall, constructed of light colored limestone rock, with coping of the same material, which varied in height from two feet at the southern terminus and fifteen inches at the northern terminus, to a maximum elevation of 3 feet 3 inches. The sidewalk was reached at the southern end by a flight of four stone steps, and at the northern by one stone step. It appears from photographs that these physical conditions were manifest and obvious to the most casual observation. The plaintiff was sixty years of age, but labored under no defect of vision, and was in possession of all her faculties. She had been a resident of Winchester, living on Loudoun or Main street, for four years prior to the accident. During a part of that time she resided three doors south of Peyton street, and for the rest of the period about one block south of that point. From her home the retaining wall and elevated sidewalk were visible. She had walked up the stone steps at the southern terminus of the sidewalk and along its entire length at least six times; had occasionally driven along the street by the side of it; and had walked past it on the opposite side of the street and, crossing over to the northern terminus, had ascended the stone step and traversed the sidewalk from north to south, descending into Peyton street by means of the stone steps at that point. She had occasionally visited the houses of friends living on the side of the street opposite to and in plain view of the retaining wall. This wall and sidewalk were also visible from the corner of Loudoun or Main street and Baker street, along the route usually travelled by the plaintiff in going to the store of the son-in-law with whom she resided.

On the occasion of the accident the plaintiff left her home

before dark to attend commencement exercises at the Valley Female College. She approached the elevated sidewalk from Peyton street, ascending the stone steps referred to. The exercises were attended by a large number of persons, and lasted until eleven o'clock at night. At their conclusion the plaintiff, in company with her granddaughter, a child ten years of age, came out with the throng of people to the sidewalk. Her version of what then occurred is as follows:

"I did not think of anything. It was dark. I tried to go down the pavement when I came out of the gate. And I thought it would be a better way to get home to go out in the street, never thinking about there being any danger; and then I fell off the bank, just walked off it."

In answer to the question: "Did you step off the bank inadvertently, or did you walk straight ahead?" she replied: "I walked straight ahead, with the intention of going out in the street."

"Q. You say there was a crowd? A. Well, there was some above and some below. I did not pay much attention to it any way, but just thought the street would be the best way to go home."

"Q. Did you know at that time that the sidewalk was much higher than the street?

"A. No, sir; I didn't know about it or think much about it; I just supposed it was like the pavement at any other place, just a little gutter."

On cross-examination, in reply to the suggestion that she must have known the sidewalk was higher than the roadway if she went up the steps to get upon it, she remarked: "Well, when people go up steps they don't always stop to think what else is around it."

At the trial exceptions were taken by the defendant to the ruling of the court in refusing to grant some of the instructions offered by it, and in giving others of its own.

Of the instructions generally, it may be affirmed that they are correct expositions of the principles intended to be elucidated.

In view of the tendency of the evidence, however, to fix knowledge upon the plaintiff that the sidewalk was *dangerously* higher than the street, instructions No. 4 and No. 9 failed to plainly and explicitly instruct the jury upon that phase of the case, and were calculated to mislead them.

Instruction No. 4 is as follows: "The court instructs the jury, that crossing a road or street or walking from a sidewalk into the street, either at right angles or diagonally, at a point where there is no regular crossing, does not in itself constitute contributory negligence on the part of a pedestrian, but is a circumstance to be weighed by the jury in view of all the circumstances of the case."

The vice of this instruction upon the evidence is its failure to differentiate a case in which a pedestrian has knowledge of the defect which renders the crossing dangerous, from one in which he is ignorant of that fact. The weight of authority sustains the proposition that one who does not know that there is a material inequality between the sidewalk and street, or other conditions rendering an attempt to pass from the one to the other dangerous, in the exercise of ordinary care, is not guilty of negligence in leaving the former at a point other than a regular crossing, and in going into the street. Beach on Cont. Neg. (1st ed.), p. 260; *City of Augusta* v. *Thorpe*, 38 S. E. R., 389; *Orme* v. *City of Richmond*, 79 Va., 86-90; *City of Danville* v. *Robinson*, *ante* p. 448; *Bell* v. *Town of Clarion*, 84 N. W., 962. See also authorities collected in notes to *Ely* v. *City of Des Moines* (Iowa), 17 L. R. A., 124, and in 15 Amer. & Eng. Ency. of Law (2nd ed.), 473.

A person using the streets of a city is only required to exercise ordinary care to avoid accident. But "ordinary care" is not an absolute but a relative term, the standard of which is neces-

sarily variable and is influenced and controlled by the extraneous circumstances surrounding the particular transaction. No fixed rule can be formulated for all cases. What might be regarded as the exercise of ordinary care under some circumstances would under others constitute gross negligence. *Newport News, &c. R. R. Co.* v. *Bradford, ante* p. 117.

A practical application of the rule would impose a higher degree of caution upon one who attempts to step from a sidewalk to the street in the dark at a place other than a public crossing, than would be required at such crossing.

It is wholly impracticable for a city to keep all the space along its sidewalks in as suitable and convenient a condition for pedestrians to cross as at regular crossings, and hence a greater degree of care is necessary in the one instance than in the other.

One has a right to assume that all parts of the street are in a reasonably safe condition for the purpose for which they are intended, but he has no right to assume that all parts are as smooth and even as places specially prepared for regular crossings. Such an assumption would contravene common experience; and, if permissible, would impose intolerable burdens upon cities. *Raymond* v. *City of Lowell* (6 Cush., 524), 53 Amer. Dec., 57; 2 Beach on Pub. Cor., sec. 1540.

But a different principle applies to a case in which a person who *with knowledge* of conditions rendering an attempt to pass from a sidewalk to a street obviously and imminently dangerous, nevertheless, from inadvertence or inattention, steps from the one to the other, in the dark, and is injured. Such conduct would amount to contributory negligence *per se,* and would bar a recovery, however negligent the city may have been.

The general doctrine is, that whether one has been guilty of negligence or not is a mixed question of law and fact, to be determined by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence is conflicting. But, inas-

much as instructions are predicated upon a hypothetical state of facts, when from the facts assumed, it is manifest that an ordinarily prudent person would not have acted in the manner supposed, it is the duty of the court to tell the jury, if they shall believe from the evidence that such conduct has been established, as matter of law, it constitutes contributory negligence and would defeat a recovery.

Instruction No. 6, asked for by the defendant, recognizes that principle; but the effect of that instruction was neutralized by instruction No. 9, and the general rule is, that where inconsistent instructions have been given, the verdict of the jury should be set aside. *N. & W. R. R. Co.* v. *Mann, ante* p. 180.

Instruction No. 9 told the jury "that a passer has a right to presume the streets and sidewalks to be reasonably in a safe condition. And though the plaintiff had actual knowledge of their bad condition, their use by her was not of itself negligence, and did not impose on her the exercise of extraordinary care."

As an abstract proposition, the instruction may be correct, but it is obvious that, as applied to the evidence in this case its only effect could have been to mislead the jury.

The instruction applies to a class of cases where the public are not forbidden to use the streets, although they may know that they are defective or out of repair, provided they exercise ordinary care to prevent accident. But the case under consideration falls within an exception as well established as the rule itself, which is, that if the unsafe condition of the street is such as to render its use obviously and imminently dangerous, there can be no recovery by one cognizant of that fact. Beach on Con. Neg., sec. 77; Tiedeman Mun. Cor., sec. 352; 15 Amer. & Eng. Enc. L. (2nd ed.), 468; *Osborne* v. *Pulaski L. & W. Co.,* 95 Va., 16; *City of Danville* v. *Robinson, ante* p. 448.

The instruction gave the general doctrine which was not applicable, but omitted the qualification of the rule which was applicable to the case in hand.

The jury in attempting to apply the principle enunciated by the instruction to the case with which they were dealing, must have interpreted it to mean that although they might believe from the evidence that the plaintiff knew the sidewalk was more than a yard higher than the street, she had a right, nevertheless, to step from the one to the other in the dark, and put the city to the hazard of her reaching the roadway in safety. Of course the statement of such a proposition embodies its refutation.

In view of the tendency of the evidence to affect the plaintiff with knowledge of the dangerous condition of the sidewalk at the place of the accident, the jury ought to have been told that if they believed from the evidence the plaintiff had such knowledge, they should find a verdict for the defendant.

As to the effect of knowledge of defects in a sidewalk which occasion accident, see *City of Richmond* v. *Courtney*, 32 Gratt., 797.

Exceptions were also taken by the defendant to the action of the court in admitting and excluding certain evidence. Without referring to the questions and answers in detail, it is sufficient to say that there was no reversible error in the rulings of the court in that regard.

As a new trial of the case must be ordered, the court refrains from an expression of opinion as to the weight of the evidence.

For the foregoing reasons the judgment complained of will be reversed, the verdict set aside, and the case remanded for a new trial to be had therein in accordance with the views herein expressed.

*Reversed.*