## Wytheville.

### MITCHEL v. CITY OF RICHMOND.

#### June 13, 1907.

1. MUNICIPAL CORPORATIONS—*Streets—Leaving Sidewalks—Walking in Gutter—Negligence.*—A pedestrian who leaves a city sidewalk, which is neither obstructed nor in an unsafe condition, but merely wet, muddy and in a disagreeable condition to walk on, and walks in and along an adjacent paved gutter constructed for drainage only, and, without exercising ordinary care for his own safety, falls into a sewer inlet made in the gutter for the purpose of drainage, is guilty of such contributory negligence as bars any recovery against the city. The necessity for such inlets is a matter of common knowledge, of which every one must take notice, and the dangers of which they must guard against, even where they leave the sidewalk for sufficient cause.

2. APPEAL AND ERROR—*Reviewing Rulings on Immaterial Evidence—Correct Verdict.*—Where it appears that there was no sufficient reason for a pedestrian's leaving the sidewalk and walking in an adjacent paved gutter, and the jury have rightly so found under instructions from the court, this court will not undertake to review the rulings of the trial court in rejecting evidence offered by the plaintiff, as to the city's having repaired the place in the gutter where the plaintiff was injured, or that others had fallen into the same or similar openings in the gutter. As there could have been no other verdict rightly found than what was found, the proffered evidence was immaterial.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Isaac Diggs, W. A. Willroy* and *M. H. Omohundro,* for the plaintiff in error.

*Henry R. Pollard,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by Mrs. Elizabeth B. Mitchel, to recover damages from the city of Richmond, for injuries suffered by her while walking along one of the streets of the city.

It appears that the plaintiff and a companion, Mrs. Wingfield, started after night, April 28, 1904, to attend a church entertainment, several squares away from their home; that they walked down Grove Avenue until they came to Sycamore Street (one street above where the accident occurred), where they encountered a wet and muddy sidewalk, on which it was, as they considered, unfit for them to walk (Mrs. Wingfield, stating that she had on low-quarter shoes, and that the sand and gravel was so deep that it came into her shoes, and that there was water on the sidewalk), and finding it in this condition, they stepped from the sidewalk and undertook to walk in the granolithic gutter running along by the side of the sidewalk, and the plaintiff slipped and fell into a sewer opening in the gutter at the corner of Rowland street and Grove avenue, just as she was crossing Rowland street, whereby she received injuries for which she brings the suit.

The theory upon which plaintiff rests her right of recovery is, not that the negligence of the city in the construction of the granolithic gutter was the proximate cause of her injury, or that the sidewalk was obstructed or in an unsafe condition, but that the city had knowledge that the sidewalk was muddy, wet and unsuitable for pedestrians, while the granolithic gutter was smooth and nearly level, and not only suitable, but inviting for pedestrians; that for a long period of time previous thereto the city had allowed the sidewalk to remain in a condition unsuitable for persons to walk on, and had permitted and invited persons to walk in this gutter in preference to the sidewalk, therefore the city was answerable in damages to the plaintiff

for the injuries of which she complains. In other words, the plaintiff does not allege that the sidewalk which she left was obstructed or in an unsafe condition, nor that the granolithic gutter, upon which she undertook to walk, was not properly constructed and suitable for the purposes for which it was intended, but that the city's negligence consisted in the improper construction of the sewer opening, and of permitting it to remain without change or alteration after it had notice of the dangerous condition and an opportunity to repair it.

As stated in the petition for this writ of error, when the case came to trial, the plaintiff insisted that she had the right to leave the sidewalk, if it was *unsuitable* to walk on, while the defendant city contended that she had no such right unless the sidewalk was *unsafe;* and after the evidence had been submitted to the jury, the court discarded the instructions asked for by the plaintiff and gave the following asked by the defendant as covering the single issue to be determined by the jury:

"The law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not required to have its streets or sidewalks so constructed as to secure absolute immunity from danger in using them, nor is it bound to employ the utmost care and exertion to that end. Those parts of a street usually located on either side of the driveway are commonly called sidewalks, and are intended to be used by pedestrians, and to which pedestrians should resort when passing along the street, unless for sufficient and reasonable cause, it becomes necessary to abandon the sidewalk for the purpose of crossing the street, or when the sidewalk is not in a reasonably safe condition for such use by pedestrians; and the court further instructs the jury that a pedestrian has no right to abandon the use of a sidewalk, which is in a reasonably safe condition for use, and use some other portion of the street without sufficient cause, as hereinbefore explained; and if, therefore, the jury believe from the evidence that the sidewalk on the north side of Grove avenue,

along which the plaintiff was passing at the time of the accident, was in a reasonably safe condition for use by pedestrians, and that plaintiff abandoned its use and resorted to and used that part of the street known as the gutter, in lieu of the sidewalk, and that while so using and passing along said gutter, she slipped or fell into the sewer inlet, as in the declaration alleged, and thereby received the injury complained of, and that but for such abandonment of the sidewalk, and use of the gutter, the accident would not have' happened, then she was guilty of contributory negligence, and is not entitled to recover in this case."

The verdict of the jury was for the defendant, and the sole question requiring our consideration is, whether or not the trial court erred in instructing the jury as to the law of the case.

After the case had gone to the jury, it became necessary for the court to respond to certain questions propounded by members of the jury as to the meaning or purport of the instructions that had been given them, and the oral answers to these questions are made the ground for an exception taken by the plaintiff. With reference to this exception, we consider it only necessary to say that the "oral instruction" in no way departed from the direct and plain statement of the law of the case contained in the written instruction.

The law is as well settled as to the duties of a municipal corporation to construct and maintain, in a reasonably safe condition, the sidewalks along its streets, for the use of pedestrians as it is with reference to keeping the roads and streets in like condition for the use of travelers in vehicles; but no authority is produced for the proposition that a pedestrian may leave a sidewalk, neither obstructed nor in an unsafe condition, but merely muddy, wet and in a disagreeable condition to walk on, and for an injury received in an attempt to walk in and along a gutter constructed for drainage only, recover damages of the corporation.

The rule of law laid down in the instruction of the court in

this case is substantially as stated in sec. 1008, 2 Dillon on
Mun. Corp., viz.: "The duty of a municipal corporation to
keep the roads and streets in repair, extends as much to side-
walks for the use of pedestrians as to the traveled way for the
use of carriages.    When an ordinary public highway is out
of repair, the public have a temporary right to go on the ad-
joining land for the purpose of travel.   So sidewalks and street-
crossings are constructed for the use of foot passengers; but if
these happen to be obstructed, or to be in such a dangerous con-
dition as to deter an ordinary prudent man from using them,
then one may walk elsewhere.   If he does so, however, without
sufficient reason, and is injured, his injury cannot be imputed
to the negligence of the city."

Accordingly it was said in *Winchester* v. *Carroll,* 99 Va. 727,
40 S. E. 37: "The general doctrine is that, whether one has
been guilty of negligence or not is a mixed question of law and
fact, to be determined by the court when the facts are undis-
puted or conclusively proved, but not to be withdrawn from the
jury when the facts are disputed, or the evidence is conflicting.
But, inasmuch as instructions are predicated upon a hypotheti-
cal state of facts, when from the facts assumed, it is manifest
that an ordinarily prudent person would not have acted in the
manner supposed, it is the duty of the court to tell the jury, if
they believe from the evidence that such conduct has been es-
tablished, as a matter of law, it constituted contributory negli-
gence and would defeat a recovery."

In that case the plaintiff came upon the sidewalk of the de-
fendant city *en route* to her home, where the sidewalk was
twelve feet wide, extending 212 feet in length, with an elevation
of a little over three feet above the level of the street, and held
in position by a perpendicular retaining wall, and without bar-
riers or guard-rails to protect it.   In stating, at the trial, her
version of what occurred, the plaintiff said:   "I did not think
of anything.   It was dark.   I tried to go down the pavement
when I came out of the gate; and I thought it would be a better

way to get home to go out in the street, never thinking about there being any danger; and then I fell off the bank, just walked off it."

In *McLaughlin* v. *Dubuque,* 42 Ia. 539, a recovery was denied for injuries sustained by the plaintiff by reason of slipping on ice formed in the street gutter, and the opinion of the court says: "Sidewalks and cross-sidewalks alone are constructed for foot travelers, and he who, without some good and sufficient reason, walks elsewhere and is injured, should not be permitted to complain that he has been injured through the fault and negligence of the city."

The doctrine upheld in that case is re-affirmed in the later case of *Alline* v. *City of Lemars,* 71 Ia. 654, 33 N. W. 160, where it is said: "A pedestrian on a sidewalk, who voluntarily and without necessity steps from the walk without knowing that he can do so with safety, and steps in a hole near the walk and is thereby injured, is guilty of contributory negligence, and cannot recover of the city."

To the same effect is *Canavan* v. *City of Oil City,* 183 Pa. St., 611, 38 Atl. 1096, and a number of cases there cited, among which is *Seddon* v. *Brickley,* 153 Pa. 271, 25 Atl. 1104, where it is said: "Of course, gutters and curbstones are necessary in paved sidewalks in towns, but the mere fact that a foot passenger steps into one or stumbles over the other, whether by night or day, confers no right of action. There must be further affirmative proof of specific negligence in their construction before recovery can be had."

In the case at bar the plaintiff, as in *Winchester* v. *Carroll, supra,* left the sidewalk, not because it was obstructed or dangerous, but merely *unsuitable* to walk upon, concluding, in the one case, that a better way to reach her objective point was to walk in the street; and, in the other, to walk in and along the gutter. In her evidence the plaintiff makes the statement: "So, then · we walked on this granolithic guttering because smooth and dry, never thinking about danger at all, because I

had walked on it in different places.   When I got to this cor-
ner, I didn't see this place at all.   I wasn't thinking about
harm, and I went in this hole."   Mrs. Wingfield, her com-
panion, when testifying as to the occurrence, was asked why
they were not more particular when they saw the lamp-light
was not burning, and said:  "Well, I don't know.   We were
walking along, not thinking about anything of that sort, talking
and walking along; we had been so far and it was all right,
and I did not take any notice that the lamp was not burning
until it was all over and we were discussing it there at Mr.
Copeland's, and I noticed that the light was not burning."

It cannot be said that the plaintiff actually knew the location
of the sewer inlet (necessarily a dangerous place) into which
she slipped and fell, but it is a matter of common knowledge,
of which she was required by law to take notice, that street
gutters must necessarily have inlets to drain them.   Not only
did the plaintiff leave the sidewalk for an insufficient reason,
but, after leaving it and attempting to walk in the gutter, ac-
cording to her own showing, she did not exercise ordinary care
for her own safety, and was, therefore, guilty of contributory
negligence, which bars her right of recovery for the injuries
of which she complains.

We are cited to a line of cases, including *Noble* v. *City of
Richmond,* 31 Gratt. 271; 31 Am. Rep. 726; *Clarke* v.
*Richmond,* 83 Va. 358, 5 S. E. 369, 5 Am. St. Rep. 281; *Mc-
Caull* v. *Manchester,* 85 Va. 584, 8 S. E. 379, 2 L. R. A. 691;
*City of Richmond* v. *Smith,* 101 Va. 161; 43 S. E. 345; and
others, as supporting plaintiff's contention in this case, that
as the sidewalk in question was unsuitable for her to walk on,
she had the right to leave it and walk in the gutter; but that
line of cases has no application here.   They are authority only
for the proposition that it is the duty of a city to keep its side-
walks and crossings safe for pedestrians to walk on, and if
injury result from the neglect of this duty, the party injured
may recover damages of the city; and that rule of law applies

where a party is injured from no fault of his, but the fault of the city in permitting its sidewalk to become obstructed or dangerous, necessitating pedestrians to walk elsewhere, even upon private property, where danger is encountered which was known or should have been known, by the city and guarded against. But that is not this case. Here the plaintiff left the sidewalk without sufficient reason, and the general result of her own testimony is, that, in attempting to use the gutter as a more desirable place to walk, she was not paying such attention as the situation required.

In our view of the case, sustained by a great weight of authority, whether the court below erred or not in rejecting certain evidence offered by the plaintiff as to the city's having repaired the place where she was hurt, that others had fallen in the same sewer inlet or similar openings in the gutters in that vicinity, etc., is immaterial, as there could have been no other verdict rightly rendered by the jury than they did render.

The judgment complained of must be affirmed.

*Affirmed.*