JUAN MAMERTO QUIÑONES, como padre con patria potestad sobre su menor hija CARMEN ISABEL QUIÑONES, demandante y apelado, *v.* JOSÉ ENRIQUE COLOM y MARYLAND CASUALTY COMPANY, demandados y apelantes.

Núm. 10191.—*Sometido:* Junio 9, 1950. *Resuelto:* Junio 22, 1950.

*Oscar Souffront,* abogado de los apelantes; *Luis Ángel Limeres,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

La joven de diez y seis años de edad Carmen Isabel Quiñones, representada por su padre con patria potestad, instituyó este pleito en reclamación de los daños y perjuicios que alega sufrió al recibir ciertas lesiones causadas, según ella, por la culpa y negligencia del demandado José Enrique Colom.

Allá para el 4 de diciembre de 1947 dicho demandado, quien es ingeniero civil de larga experiencia y contratista, efectuaba para el Servicio de Acueductos y Alcantarillados de Puerto Rico, cierta obra consistente en la instalación de una tubería de cuatro pulgadas de diámetro para conducir agua del acueducto de San Germán al sitio conocido por Trujillo en el mismo municipio. Para realizar la obra precisó cavar una zanja de cuarenta centímetros de profundidad por cuarenta centímetros de ancho a un costado de la carretera. Al abrir la zanja, el material excavado era echado a la orilla de la zanja más cercana al eje de la carretera. Una vez colocada la tubería, la zanja fué cubierta con el mismo material extraído al hacer la excavación. Por el margen de la carretera a cuyo largo se extendió la tubería, existe un muro de contención el cual protegía el firme contra derrumbes, ya que dicha vía pública se extendía sobre un nivel más alto que los terrenos circundantes. Una vez cubierta la zanja, quedó sobre la misma un "lomo de perro" que tenía como cuatro pulgadas de alto, quedando tierra y piedras, según declaró la corte, "regado sobre el muro, bien porque el 'lomo de perro' se desintegrase en parte, o porque se fuese sobre el muro la tierra y piedra que no cupo en la zanja abierta y luego rellenada".

La casa donde vivía la demandante estaba emplazada en terrenos contiguos a la carretera a un nivel inferior, lo que precisaba que para entrar y salir de su residencia, la demandante tuviese que pasar sobre el "lomo de perro" para llegar a la superficie del muro de contención, de allí bajar una

escalera formada por un pequeño puente de concreto aparentemente de dos pies de ancho empotrado en el muro de contención por un lado y descansando por el otro sobre un pequeño muro de concreto que soporta los dos escalones del mismo material, que componen la escalera. A uno y otro lado y debajo del pequeño puente, existe una cuneta o zanjón de más de tres pies de profundidad.

En la fecha antes indicada, y como a las doce del día, la demandante se dirigía de la escuela a su casa. Pasó sin dificultad sobre el "lomo de perro" y ya en el muro de contención pisó una piedra suelta que la hizo resbalar y caer desde el muro a la cuneta, recibiendo lesiones en una pierna, de las cuales había totalmente recuperado en la fecha en que se celebró el juicio.

A base de estos hechos, la corte inferior dictó sentencia a favor de la demandante basándose en que la causa próxima del accidente fué la negligencia del contratista. Fundamentando su conclusión se expresó así:

"Según la prueba de los propios demandados ya el trabajo que efectuaba el contratista en el sitio del accidente había terminado por completo. Estaba en la obligación el contratista por lo tanto de remover cualquier obstrucción en la carretera que pudiese causar o motivar un accidente. Ello es especialmente cierto si se tiene en cuenta la dificultad y peligro que de por sí envolvía agenciar la salida de la carretera hacia la casa de la menor lesionada a través del estrecho puentecito y escalera allí existente, sin barandillas ni protección alguna, condición que conocía el contratista porque estaba a su clara vista. Era el deber del contratista, ya que dejaba un lomo de perro de cuatro pulgadas de alto al borde del muro de contención limpiar el sitio de todo escombro, tierras y piedras sueltas que pudieren entorpecer la libre entrada y salida por dicho sitio a los vecinos que por allí tenían necesidad de transitar.

"El hecho de que la menor lesionada conociese la obra que allí se estaba realizando no exime de responsabilidad al contratista. Este insistió durante el juicio que la obra allí había sido terminada. Tenía por lo tanto la menor el derecho a esperar y

creer que la vía para bajar a su casa estaba libre, segura y expe-
dita. No venía ella obligada a medir cada paso que daba para
evitar un accidente." (T. de A., págs. 21, 22.)

En este recurso de apelación interpuesto por el deman-
dado Colom y la codemandada Maryland Casualty Co.,[1] se
señalan dos errores que se reducen a uno, o sea, el haber decla-
rado que la causa próxima del accidente fué la negligencia del
contratista y no la negligencia de la demandante.

■■ Convenimos con los apelantes en que los hechos que
la propia corte declaró probados no sostienen sus conclusiones
de derecho. El contratista no podía dejar el suelo en el es-
tado en que se hallaba antes de abrirse la zanja. Esta fué
cubierta con la tierra y piedras que se habían excavado de la
misma. Al hacer esta operación necesariamente tenía que
quedar el "lomo de perro" sobre el cual no hay controversia,
pues los ingenieros que declararon sobre el particular, dije-
ron que es la manera de hacerlo aceptada por la práctica y la
costumbre en este país. Que no se deja la superficie de la
zanja al nivel de la carretera porque por un lado las lluvias,
y por el otro el tránsito de las personas y animales, hace que
la tierra baje y entonces la superficie de la zanja quedaría
más baja que la carretera con el consiguiente peligro para
vehículos y peatones; que cuando al cabo de algún tiempo la
tierra en el "lomo de perro" ha bajado hasta donde normal-
mente debe bajar, se procede a nivelar el mismo. El contra-
tista hizo lo que siempre se hace, y por el contrato de obras
venía obligado a hacer. Él no podía impedir que alguna
piedra o tierra, bien por la acción del viento, la lluvia o los
animales, se rodase sobre la superficie del muro, ni estaba
obligado a emplear una persona para que estuviese constan-
temente en aquel sitio para mantenerlo limpio de cualquier
objeto que pudiera caer sobre el muro o la escalera. La

[1] La codemandada Maryland Casualty Co. era la aseguradora del
contratista y en ese concepto fué demandada.

demandante admitió que la entrada a su casa era normalmente peligrosa y que hasta entonces no le había ocurrido accidente alguno porque pasaba con el debido cuidado; que ella tenía conocimiento de la obra que se estaba realizando frente a la entrada de su casa y que por la mañana había pasado por allí. Si antes era peligroso el paso, ese peligro debió aumentar con motivo de la obra que se estaba realizando. En la misma proporción debió ella aumentar el grado de cuidado y circunspección para pasar por aquel sitio. Eran las doce del día, lo cual le permitía ver perfectamente el estado del suelo, y no cabe duda que la demandante no ejercitó el cuidado que de acuerdo con las circunstancias debió ejercitar, pues si ella hubiera estado atenta a su camino sin duda no se hubiera parado sobre una piedra suelta, toda vez que aun en circunstancias normales, se corre el riesgo de que al moverse la piedra, la persona pierda el equilibrio y caiga.

Los casos de *Kelly* v. *Walsh*, 164 S.W. 135 (Mo., 1914) y *City of Winchester* v. *Carroll*, 40 S.E. 37 (Va., 1901), no sostienen la tesis de la corte inferior. En el primero de ellos, el accidente ocurrió como a las nueve de la noche, estaba lloviznando y la demandante no conocía el sitio. La negligencia imputada al demandado consistió en que la zanja donde cayó la demandante no estaba provista de una barrera o luz que indicara el peligro. En el de *City of Winchester* v. *Carroll*, supra, se trataba de un accidente ocurrido al bajar de una acera a la calle en un sitio donde estaba oscuro y que no era el sitio regular para cruzar la calle. Los hechos de este último caso son tan distintos del que nos ocupa, que no puede tener pertinencia.

■■ Aquí no se trataba de una carretera en condiciones normales. Se estaban haciendo obras que requerían cuidado especial por parte del viandante. La demandante no tenía derecho a hacer caso omiso de la nueva situación creada por las obras, y seguir ejercitando el mismo grado de cuidado que ejercitaba anteriormente. Aun sin haberse hecho tales obras en la carretera, el pisar sobre una piedra redonda, como

declaró la demandante, pudo causarle la caída que produjo el accidente.

Los casos de *Davidson* v. *H. I. Hettinger & Co.*, 62 D.P.R. 301 y *Font* v. *Viking Construction Corporation*, 58 D.P.R. 689, citados por la corte inferior, no son pertinentes. Si bien en el primero de ellos se dijo que la demandante sabía que en la calle Figueroa se estaban haciendo obras de alcantarillado, también se expuso a continuación: ". . . nada hay en la prueba que demuestre que ella conocía con anterioridad al día del accidente, el hueco que había en la acera". Y citando con aprobación de *Nicholson* v. *City of South Omaha*, 77 Neb. 710, 110 N.W. 558, se dijo:

". . . No es el conocimiento que tenga el demandante del defecto en la acera o calle lo que impide que recobre, sino su falta de tener el cuidado que un hombre prudente ejercitaría tomando en consideración el peligro."

Y en el caso de *Font* v. *Viking Construction Corporation*, supra, conforme se consignó en la opinión, no hubo evidencia tendiente a probar que el demandante conocía o tenía motivos para conocer el peligro existente.

En el caso de autos ya hemos visto que la demandante no sólo conocía la situación que prevalecía en la carretera con motivo de la obra que se estaba haciendo, si que ella misma declaró que aun antes de empezarse las obras, el paso para entrar y salir de su casa a la carretera era peligroso. Dentro de las circunstancias concurrentes, una persona razonable hubiese mirado hacia el suelo y medido sus pasos en evitación de un posible accidente.

A nuestro juicio la causa próxima del accidente fué la negligencia de la propia demandante al no ejercitar el debido cuidado y circunspección. *Procede la revocación de la sentencia y declarar sin lugar la demanda con imposición de costas a la demandante.*

El Juez Asociado Sr. Snyder no intervino.